IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HOWARD JOHNSON INTERNATIONAL, INC., )
a Delaware corporation, )
)
       Plaintiff, )   No. 11 C 2593
  v. )
)   Judge Robert W. Gettleman
M.D.1, LLC, a Wisconsin limited liability company, )
and HASAN MERCHANT, SUJATA )
DEEPANKAR and RAHUL DEEPANKAR, )
individuals, )
)
       Defendants. )

**MEMORANDUM OPINION AND ORDER**

Plaintiff Howard Johnson International, Inc. has brought a four count complaint against defendants M.D.1, LLC, Hasan Merchant, Sujata Deepankar and Rahul Deepankar, seeking damages for M.D.1's failure to comply with its contractual obligations under a license agreement ("License Agreement") for the operation of a Howard Johnson® Guest Lodging facility in Benton Harbor, Michigan (the "Facility"). Count I, brought against M.D.1, alleges breach of the License Agreement. Count II, brought against Merchant and the Deepankars, alleges breach of a personal guaranty (the "Guaranty") attached to the License Agreement.[1] Counts III and IV are claims for accounting an unjust enrichment. Plaintiff has moved for summary judgment against M.D.1 and Merchant (together, "defendants") on counts I and II.[2] Defendants have filed a cross-

---

[1] The court has entered default judgements against the Deepankars, who have since filed for bankruptcy protection.

[2] As plaintiff correctly notes, summary judgment on counts I and II moots the relief sought in counts III and IV.

motion for summary judgment. For the reasons that follow plaintiff's motion is granted and defendants' motion is denied.

**FACTS**

Plaintiff is a national guest lodging franchise system that offers guest lodging services to the public under the Howard Johnson® name. Under its franchise system, plaintiff allows its franchisees to use the Howard Johnson marks, and makes, promotes and provides services to its guest lodging franchises throughout the United States.

On June 12, 2006, defendant M.D.1 executed the License Agreement with plaintiff for operation of the Facility. The Licensing Agreement required M.D.1 to operate the Facility for a term of 15 years. Under the terms of the agreement, M.D.1 was required to account for and report its "Gross Room Revenues" to plaintiff, and to pay certain monthly "Recurring Fees," including fees for royalties and other charges computed as a percentage of Gross Room Revenues. Interest on past due amounts accrued at the rate of 1.5% per month from the date due until paid. Plaintiff had the option to terminate the agreement for M.D.1's failure to pay any amounts due to plaintiff or upon M.D.1's receipt from plaintiff of two or more notices of default within any one-year period. The License Agreement also has a fee shifting provision requiring t the "non-prevailing party [to] pay all costs and expenses, including reasonable attorneys' fees, incurred by the prevailing party to enforce this Agreement or collect amounts owed under this Agreement."

To induce plaintiff to enter the License Agreement, Merchant and the Deepankars each executed the Guaranty, by which each agreed to "immediately make each payment and perform

2

or cause [M.D.1] to perform, each unpaid or unperformed obligation of [M.D.1] under the Agreement."

Defendants began operating the Facility under the Howard Johnson name on December 28, 2007. Throughout 2008 the Facility remained open, housed guests, and collected revenue from guest bookings. Beginning in April 2008, M.D.1 stopped paying the Recurring Fees owed to plaintiff under the License Agreement. Plaintiff provided written notice of the default to M.D.1 and the guarantors, but the default was never cured.

In late 2008 M.D.1 also stopped making mortgage payments to National Republic Bank of Chicago. M.D.1 ultimately lost possession of the property. In a September 30, 2009, letter plaintiff confirmed the termination of the Licensing Agreement effective September 29, 2009, as a result of M.D.1's loss of possession of the property. Plaintiff advised defendants that as a result of the termination M.D.1 was required to fulfill the post-termination obligations set forth in the Licensing Agreement, including payment of all outstanding Recurring Fees. As of September 10, 2012, those fees totaled (inclusive of interest) $137,412.30.

## DISCUSSION

The parties have filed cross-motions for summary judgment. Summary judgment is appropriate when the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law would properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant has the initial burden of pointing out the absence of a genuine issue of material fact. Once the

3

movant has met that burden, the non-moving party must go beyond the pleadings and present specific facts showing that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Electric Indus. Co., Ltd. v. New Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

In Counts I and II plaintiff alleges breaches of the Licensing Agreement and Guaranty by M.D.1 and Merchant. To prevail on these claims plaintiff has the burden to show that the parties entered into valid contracts, substantial performance by plaintiff of its obligations under the contract, failure by defendants to perform their obligations under the contract, and resulting damage to plaintiff. Harrington v. All American Plazas Inc., 2009 WL 2992538 at *4 (D. N.J. 2009) (applying New Jersey Law).[3] The joint statement of stipulated facts submitted by the parties demonstrates that plaintiff has carried this burden. The parties have agreed to the existence and validity of the contracts, defendants have not contested plaintiff's performance, and defendants have not denied that they failed to make the required payments.

In their response to plaintiff's motion and in support of their own motion for summary judgment, defendants argue that they should be excused from their payment obligations under the contracts as a result of certain actions taken by the trustee in the bankruptcy proceeding for Polo Builders, Inc., another company in which defendant Merchant held a controlling interest. On June 23, 2006, just 11 days after defendants signed the Licensing Agreement and Guaranty, the trustee in In re: Polo Builders, Inc., No. 04 B 23758 (N.D. Ill.), filed adversary actions

---

[3]With limited exceptions not applicable to the instant case, the Licensing Agreement provides that New Jersey law shall govern.

against 800 defendants alleging that they were involved in a massive Ponzi scheme orchestrated by Merchant. According to defendants, among those sued included virtually all of Merchant's friends, potential investors, and banks with which Merchant had done business prior to 2004. After being accused in 2012 of breaching his fiduciary duties to the creditors, the trustee resigned and a new trustee was appointed. The adversary actions were ultimately dismissed.

In the instant case, defendants assert that the filing of the adversary actions made it impossible for Merchant to raise the funds necessary to complete the work required for the Facility. All of Merchant's investors and banking relationships had dried up as a result of the suits. Thus, defendants argue that their performance under the License Agreement and Guaranty should be excused under the doctrines of impossibility of performance, frustration of purpose, and force majeure. Defendants are incorrect.

First, under New Jersey law, "impossibility or impracticability of performance are complete defenses where a fact essential to performance is assumed by the parties but does not exist at the time for performance." Connell v. Parlavecchio, 255 N.J. Super. 45, 49 (N.J. Super. A.D. 1992). They are not defenses, however, "where the difficulty is the personal inability of the promiser to perform." Id. Thus, real estate purchasers who are unable to perform because of an inability to obtain financing have been held to their contractual obligations. "As a general rule the simple inability to pay does not create an impossibility or impracticability which would excuse performance of contract obligations." Gen. Elec. Cap. Corp. v. Charleston, 1989 WL 9363 at *6 (E.D. Pa. 1989)(applying New Jersey law and citing §§ 261 and 265 of the Restatement (2d) Contracts.). Simply put, the failure by M.D.1 to obtain financing, for whatever reason, is a contingency that could have been addressed in the Licensing Agreement. The fact

5

that it was not does not create an impossibility or impracticability defense. Connell, 255 N.J. Super. at 49-50; see e.g., YPI 180 N. LaSalle Owner LLC v. 180 N. LaSalle II, LLC, 403 Ill.App.3d 1, 7 (1st Dist. 2010)("Subsequent contingencies, not provided against in the contract, which render performance impossible, do not bring the contract to an end." "Even if the global credit crisis made it difficult to nearly impossible to procure the sought-after commercial financing, this is not the relevant issue. The primary issue is whether it was foreseeable that a commercial lender might not provide [purchaser] with the financing sought . . . . The potential inability to obtain commercial financing is generally considered a foreseeable risk that can be readily guarded against by inclusion in the contract of financing contingency provisions.").

Thus, the assertion by defendants that the inability to obtain financing was the result of the trustee's actions is irrelevant. The possibility that M.D.1 might not obtain financing was a foreseeable risk that could have been guarded against contractually. Accordingly, the court rejects defendants' impossibility and impracticability defenses.[4]

Defendants' frustration of purpose defense fails for similar reasons. To sustain a defense under the doctrine of frustration under New Jersey law it is not "sufficient to disclose that the `purpose' or `desired object' of but one of the contracting parties has been frustrated. It is their common object that has to be frustrated, not merely the individual advantage which one party or

---

[4]In addition to being legally insufficient, the impossibility and impracticability defenses are factually deficient as well. The License Agreement called for M.D.1 to make monthly payments of Recurring Fees that included royalties and other charges computed as a percentage of Gross Room Revenues. It is undisputed that the Facility operated throughout 2008, hosted guests and collected Gross Room Revenues, yet no percentage payments were made. The lack of financing had no effect on defendants' failure to make these required payments.

other might have achieved from the contract." Edwards v. Leopoldi, 20 N.J. Super. 43, 55 (N.J. Super. A.D. 1952).

In the instant case the common object of the Licensing Agreement was to operate a Howard Johnson® guest lodging facility. That purpose was achieved. The failure of M.D.1 to acquire financing might have frustrated its ability to turn a profit, but it did not destroy the purpose of the contract. "A promise will not be discharged, however, because the performance promised in return has lost value on account of supervening fortuitous circumstances unless they nearly or quite completely destroy the purpose both parties to the bargain had in mind." Id.

Finally, defendants' argument that the performance is excused based on the "force majeure" provisions of the License Agreement is without merit. As an initial matter, defendants incorrectly rely on ¶3.7, which required M.D.1 to obtain all necessary permits and licenses and to pay all taxes:

> 3.7 Governmental Matters. You will obtain as and when needed all governmental permits, licenses and consents required by law to construct, acquire, renovate, operate and maintain the Facility and to offer all services you advertise or promote. You will pay when due or properly contest all federal, state and local payroll, withholding, unemployment, beverage, permit, license, property, ad valorem and other taxes, assessments, fees, charges, penalties and interest, and will file when due all governmental returns, notices and other filings. You will comply with all applicable federal, state and local laws, regulations and orders applicable to you and/or the Facility, including those combating terrorism such as the U.S.A. Patriot Act and Executive Order 13224.

Paragraph 3.7 is obviously not a "force majeure" clause. It contains no language that could, in any way, relieve defendants of their obligations under the contracts. As plaintiff points out, the Licensing Agreement does have a force majeure clause in ¶ 11.3, which excuses performance if the Facility suffers a "Casualty" that prevents operation "in the normal course of business with less than 75% of guest rooms available." Casualty is defined as "destruction or

7

significant damage to the Facility by act of God or other event beyond [M.D.1's] reasonable anticipation and control."

There is no evidence that the Facility has suffered any damage that would prevent operation. The clause obviously does not apply to defendants' inability to obtain financing and the defense fails as a matter of law.

## **CONCLUSION**

For the reasons discussed above, plaintiff's motion for summary judgment on counts I and II (Doc. 54) is granted, and defendants' motion for summary judgment (Doc. 59) is denied. Plaintiff is directed to prepare, file, and serve a proposed judgment order by October 29, 2012, for presentation to the court on October 31, 2012, at 9:15 a.m.


**ENTER:** October 19, 2012

_____
**Robert W. Gettleman**
**United States District Judge**